1

2

3                    **UNITED STATES DISTRICT COURT**

4                         **DISTRICT OF OREGON**

5                        **PORTLAND DIVISION**

6

7   MARINA RODRIGUEZ,              )
                                   )
8              Plaintiff,          )        No. 12-cv-01223-HU
                                   )
9   vs.                           )
                                   )
10  CENTRAL SCHOOL DISTRICT 13J,   )   **FINDINGS & RECOMMENDATION ON**
    an Oregon Special District,    )        **MOTION TO DISMISS**
11                                 )
              Defendant.           )
12
    _____
13

14

15  John D. Burgess
    Burgess Callahan LLC
16  Suite 214 The Security Bldg.
    161 High Street, SE
17  Salem, OR 97301

18       Attorney for Plaintiff

19

20

21  Benjamin R. Becker
    Haley E. Percell
22  Oregon School Boards Association
    P.O. Box 1068
23  Salem, OR 97301

24       Attorneys for Defendant

25

26

27

28

    1 - FINDINGS AND RECOMMENDATIONS

HUBEL, Magistrate Judge:

The plaintiff Marina Rodriguez brings this action against her employer, Central School District 13J (the "School"), alleging employment discrimination, hostile work environment, and intentional infliction of emotional distress ("IIED").    Dkt. #1, Complaint.    Rodriguez alleges repeated incidents of harassment, discriminatory statements, and abusive treatment to which Rodriguez was subjected by one of her supervisors, Yvonne Van Horn. Rodriguez claims she submitted written and verbal complaints to the School regarding Van Horn's actions, but the School failed to take reasonable steps to remedy the situation.    She further alleges she suffered severe emotional distress as a result of Van Horn's and the School's actions, causing her to lose "weeks of work as a result of anxiety and stress-related problem[s]." *Id.*, ¶ 20.    She claims that in November 2011, her doctor "contacted the school and requested that Van Horn no longer work with [Rodriguez] because of the deleterious effects it was having on her mental health." *Id.*

In her Complaint, Rodriguez asserts the following six claims for relief: (1) impairment of her employment contract rights on the basis of her race, in violation of 42 U.S.C. § 1981; (2) unlawful racial discrimination/harassment in violation of ORS § 659A.030; (3) hostile work environment due to her ethnicity, in violation of 42 U.S.C. § 1981; (4) hostile work environment under state law, citing ORS § 659A.030, *et seq.*; (5) hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; and (6) IIED under state law.    She also seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988, ORS § 659.121, and other applicable state and federal law.    Dkt. #1.

1    The matter currently before the court is the School's motion
2  to dismiss.   Dkt. ##4 & 5.   The School seeks dismissal of
3  Rodriguez's Complaint in its entirety.   Rodriguez opposes the
4  motion, Dkt. #12, and the School has replied, Dkt. ##17 & 22.   The
5  court heard oral argument on the motion on November 14, 2012.   The
6  undersigned submits the following findings and recommended
7  disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B).

8
9              **I.   Motion to Dismiss Fifth Claim for Relief**

10   The School moves for dismissal of Rodriguez's Title VII claim
11  for lack of subject-matter jurisdiction, pursuant to Federal Rule
12  of Civil Procedure 12(b)(1).   The School argues the court lacks
13  subject-matter jurisdiction over this claim because Rodriguez
14  failed to allege she exhausted her federal administrative remedies
15  before filing suit, or that she received a right-to-sue letter from
16  the EEOC.   The School argues these steps are required in order for
17  the court to have jurisdiction over Rodriguez's claims.   Dkt. #5,
18  pp. 3-4 (citing, *inter alia*, *B.K.B. v. Maui Police Dep't*, 276 F.3d
19  1091, 1099 (9th Cir. 2002); *McDonnell Douglas Corp. v. Green*, 411
20  U.S. 792, 798, 93 S. Ct. 1817, 1822, 36 L. Ed. 2d 668 (1973)
21  ("jurisdictional prerequisites to a federal action" include "filing
22  timely charge of employment discrimination with the [EEOC] and
23  . . . receiving and acting upon the Commission's statutory notice
24  of the right to sue").

25   Although Rodriguez agrees exhaustion of administrative
26  remedies is a prerequisite to her Title VII claim, she argues she
27  is not required to *plead* exhaustion.   She argues the School is
28  confusing what elements she must show to prove a *prima facie* case

3 - FINDINGS AND RECOMMENDATIONS

1   for each of her claims, with what she must *plead* to satisfy federal
2   notice pleading standards.  Rodriguez asserts, she is only required
3   to "state a short and plain statement of jurisdiction under
4   F.R.C.P. 8(1)(a)," a requirement she claims she has satisfied.
5   Dkt. #12, pp. 7-8.  She argues the School is conflating the
6   pleading requirements with its own potential affirmative defense to
7   her title VII claim.  Moreover, Rodriguez claims she has, in fact,
8   exhausted her administrative remedies, a fact she asserts the
9   School knows because it participated in the administrative process
10  preceding the filing of this lawsuit.  Rodriguez notes that because
11  the School has not filed an Answer to her Complaint, she is
12  entitled amend as of right, if required, to reflect that she has
13  exhausted her administrative remedies.  *Id.*, p. 8 (citing Fed. R.
14  Civ. P. 15(a)(1)(B)).

15      In its reply, the School reiterates its argument that
16  Rodriguez not only must exhaust her administrative remedies; she
17  also must plead exhaustion.  Dkt. #17, pp. 7-8.

18      Federal appellate courts are split on whether a plaintiff
19  seeking relief under a federal statute requiring exhaustion of
20  administrative remedies actually must plead exhaustion.  *Compare,*
21  *e.g., Moore v. District of Columbia*, 445 Fed. Appx. 365, 366 (D.C.
22  Cir. 2011) ("Failure to exhaust administrative remedies is an
23  affirmative defense.  A plaintiff need not plead exhaustion in his
24  complaint.") (citing *Kim v. United States*, 632 F.3d 713, 719 (D.C.
25  Cir. 2011); *Colbert v. Potter*, 471 F.3d 158, 165 (D.C. Cir. 2006));
26  *with Pretlow v. Garrison*, 420 Fed. Appx. 798, 802-3 (10th Cir.
27  2011) (in the Tenth Circuit, "an employment discrimination
28  plaintiff must 'plead and show' exhaustion."); *Brewer v. Cleveland*

4 - FINDINGS AND RECOMMENDATIONS

*Municipal Sch. Dist.*, 84 Fed. Appx. 570, 572 (6th Cir. 2003) (where plaintiff failed to "allege or demonstrate" that she had exhausted administrative remedies, district court properly dismissed complaint without prejudice); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982) ("[A] plaintiff must generally allege in his complaint that 'all conditions precedent to the institution of the lawsuit have been fulfilled.' Fed. R. Civ. P. 9(c)."); *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979) ("A judicial complaint that fails to allege exhaustion of administrative remedies or that the plaintiff should for some adequate reason be excused from this requirement is properly subject to dismissal."). *Cf. Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978) (district court erred in failing to grant motion to amend complaint to allege requisite exhaustion of remedies).

The Ninth Circuit Court of Appeals has not spoken definitively on the pleading requirements of Title VII. In *Miles v. Bellfontaine Habilitation Center*, 481 F.3d 1106 (9th Cir. 2007) (*per curiam*), the court observed that although Title VII requires exhaustion, "failure to exhaust administrative remedies is an affirmative defense that a defendant must prove." *Id.*, 481 F.3d at 1107 (citing *Miller v. Runyon*, 32 F.3d 386, 388 (8th Cir. 1994)). However, the plaintiff in *Miles* had, in fact, alleged exhaustion in her Complaint. *See id.* In the context of the Prison Litigation Reform Act, the Ninth Circuit expressly refused to impose "a technical pleading requirement without express congressional authorization," noting "[l]egislators know how to indicate that exhaustion is a pleading requirement when they want to." *Wyatt v.*

5 - FINDINGS AND RECOMMENDATIONS

*Terhune*, 315 F.3d 1108, 1118-19 (9th Cir. 2003) (recognizing five other Circuits in agreement; discussing cases).  In the employment context, the Ninth Circuit found error where a district court *sua sponte* dismissed a Title VII plaintiff's complaint *with prejudice* for "fail[ure] to allege that she had complied with the pre-litigation requirements of 42 U.S.C. § 2000e-5(b)."  *Douglass-Woodruff v. Nevada ex rel. its Dept. of Mental/Health*, 23 Fed. App. 758 (9th Cir. 2001) (mem.).  The court observed the plaintiff's pleading could have been "saved by an amendment that alleges that she exhausted her administrative remedies with the EEOC." *Id.*, 23 Fed. App. at 759.  Though not definitive, this at least suggests the Ninth Circuit might require that exhaustion be pled in the Complaint.

I agree with the view that although a Title VII claimant must exhaust administrative remedies prior to bringing suit, the statute does not require the plaintiff to *plead* exhaustion in order to satisfy the jurisdictional prerequisites to a Title VII action. Further, I note the Ninth Circuit has specifically rejected any argument that Federal Rule of Civil Procedure 9(c) requires a plaintiff to plead the performance of procedural prerequisites to the filing of a claim.  "Rule 9(c) does not expressly require that performance of conditions be pled, it merely sets forth the manner in which such pleadings should be made."  *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1124 (9th Cir. 1998) (citing James Wm. Moore, *Moore's Federal Practice*, § 9.04[1] (3d ed. 1997) "('Neither Rule 9(c) nor Rule 8(a)(2) expressly requires that the performance or occurrence of conditions precedent be pled at all by a claimant.')"); *see Wyatt*, 315 F.3d at 1118 n.12 (concluding PLRA

6 - FINDINGS AND RECOMMENDATIONS

exhaustion need not be pled as a condition precedent under Rule 9(c)).  Failure to exhaust remedies is an affirmative defense the School must allege and prove.

Accordingly, I recommend the School's motion to dismiss Rodriguez's Fifth Claim for Relief for lack of subject-matter jurisdiction be denied.

If, as Rodriguez suggests, the School knows the administrative remedy was, in fact, exhausted because it participated in the investigation, and if the School also clearly knows a right-to-sue letter was received by Rodriguez, then the court is left to wonder what the point is of the School's motion.  Indeed, if the facts are as Rodriguez suggests, a motion such as this argues in favor of the court remembering this sort of litigation tactic if and when it is called upon to award attorney's fees to either party.  The successful plaintiff may well be entitled to more fees if this is the practice of the defendant.  The successful defendant may well not be entitled to fees, or to less fees, if the plaintiff's allegations prove to be true.

## II.  *Motion to Dismiss Remaining Claims*

The School moves to dismiss all of Rodriguez's other claims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.  Chief Judge Aiken of this court recently set forth the standard for the court's consideration of a motion to dismiss in *Gambee v. Cornelius*, No. 10-CV-6265-AA, 2011 WL 1311782 (D. Or. Apr. 1, 2011) (Aiken, C.J.). Judge Aiken observed:

7 - FINDINGS AND RECOMMENDATIONS

1
2
3
4
5
6
7
8
9
10
11
12
13

> Under Fed. R. Civ. P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563[, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929] (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint." *Daniels-Hall*, 629 F.3d at 998.

14
15

*Id.* at *2.

16
17

### A. Claims Subject to Oregon Tort Claims Act

18
19
20
21
22
23
24
25
26
27
28

As noted above, Rodriguez's Second, Fourth, and Sixth Claims for Relief are state-law claims. The School argues Rodriguez can only maintain state law claims against it if she first gave the School proper notice pursuant to the Oregon Tort Claims Act, ORS § 30.275(2)(b) ("OTCA"). The OTCA provides that, subject to certain exceptions not applicable here, notice of all claims except those for wrongful death must be given "within 180 days after the alleged loss or injury." *Id.* The School claims Rodriguez "failed to give notice [within the 180 days] required by the Oregon Tort Claims Act," requiring dismissal of her state law claims. Dkt. #5, p. 4; Dkt. #22. In addition, similar to its argument regarding

8 - FINDINGS AND RECOMMENDATIONS

exhaustion of remedies in connection with Rodriguez's Title VII claim, the School argues Rodriguez's Complaint is defective because it fails to include an allegation that she gave the required tort claim notice to the School. *Id.*

Rodriguez responds, first, that the School's statement alleging she "failed to give notice required by the Oregon Tort Claims Act" is false. She claims the notice not only was given, but the School responded to the notice. Dkt. #12, p. 8. She further argues, again, that she was only required to provide a "short and plain statement" to inform the School of the grounds for her claims. She asserts there is no requirement that she actually plead the notice was given pursuant to the OTCA. Dkt. #12, p. 8 (citations omitted).

The School replies that although Rodriguez sent the School "a document purporting to be a tort claim notice," the notice in question was untimely as to most of Rodriguez's claims. Dkt. #17, pp. 6-7.

The Oregon Supreme Court has held that "[t]he *pleading* and proof of notice sufficient to satisfy the requirements of ORS 30.275 is a mandatory requirement and a condition [p]recedent to recovery under the Oregon Tort Claims Act." *Urban Renewal Agency v. Lackey*, 275 Or. 35, 40, 549 P.2d 657, 660 (1976) (emphasis added). *Lackey* is dispositive of the School's motion regarding these three claims. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, ___ U.S. ___, 130 S. Ct. 1431, 1450, 176 L. Ed. 2d 311 (2010) (Stevens, J., concurring) (discussing the interplay between federal procedural rules, and state procedural rules that, in some instances, may be "so bound up with the state-created right

9 - FINDINGS AND RECOMMENDATIONS

or remedy that [a state rule] defines the scope of that substantive right or remedy," such as where a "seemingly procedural rule[]" makes it "significantly more difficult to bring or to prove a claim, thus serving to limit the scope of that claim"). Accordingly, the School's motion to dismiss Rodriguez's Second, Fourth, and Sixth Claims for Relief should be granted, and those claims should be dismissed *without prejudice*, allowing Rodriguez to take appropriate steps to amend her Complaint to allege the giving of proper notice under the OTCA.[1]

## B.  Discrimination and Harassment Claims

### 1.  Disparate Treatment Allegations

According to the School, Rodriguez's "first and second claims appear to allege disparate treatment claims on the basis of race." Dkt. #5, p. 4 (footnote omitted).  The School argues Rodriguez has failed to state a claim for disparate treatment under 42 U.S.C. § 1981, because she has not alleged that she performed her job adequately, she suffered any adverse employment action, or she was treated differently from similarly-situated individuals outside of her protected class. Dkt. #5, p. 5 (citing *Grimmett v. Knife River Corp.-NW*, 2011 WL 841149, at *7 (D. Or. Mar. 8, 2011) (Hubel, MJ)).

---

[1]Rodriguez's failure to file an amended pleading within 21 days of the School's filing of its motion to dismiss will require either the School's written consent or leave of court in order to amend her pleading.  Fed. R. Civ. P. 15(a)(2).  Rodriguez should be allowed to amend her Complaint to cure the identified defects, if it can be done in good faith.  Rodriguez should be required to replead where necessary within 21 days of the District Judge's ruling on this motion.

The School argues Rodriguez must plead these facts in order to survive dismissal.  *Id.*

Rodriguez argues, again, that she has complied with federal notice pleading requirements, giving the School adequate notice of the nature of her claims.  Dkt. #12, p. 9.  She further notes *Grimmett* was discussing the requirements for a *prima facie* case of race discrimination in the context of a motion for summary judgment, not a motion to dismiss.  *Id.*

In reviewing the sufficiency of a Complaint for purposes of a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).  To survive a motion to dismiss for failure to state a claim, the plaintiff is not required to make "detailed factual allegations," but must allege sufficient factual allega-tions "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

"Disparate treatment occurs 'where an employer has treated a particular person less favorably than others because of a protected trait.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577, 129 S. Ct. 2658, 2672, 174 L. Ed. 2d 490 (2009) (internal quotation marks and alterations omitted)).  The "central element" of a disparate treatment claim is "discriminatory intent." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624, 127 S. Ct. 2162, 2167, 167

11 - FINDINGS AND RECOMMENDATIONS

L. Ed. 2d 982 (2007).  Thus, a plaintiff alleging disparate treatment "'must establish that the defendant had a discriminatory intent or motive for taking a job-related action.'"  *Wood*, 678 F.3d at 1081 (quoting *Ricci*, *supra*).  This requires more than showing an employer was aware that its actions might have adverse consequences on the protected person.  *See id.*

Here, Rodriguez has made no allegations that the School had a discriminatory intent in acting or failing to act as she claims. She also has failed to allege facts indicating that due to her race, she was treated less favorably than others similarly situated, or her race was a motivating factor for some adverse employment action.  *See Butler v. City of Eugene, Or.*, 707 F. Supp. 2d 1100, 1103 (D. Or. 2010 (King, J.) (citations omitted).  Simply stated, with regard to her disparate treatment claim, Rodriguez has failed to plead facts that would "permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). Therefore, the School's motion to dismiss her First and Second Claims for Relief should be granted, and those claims should be dismissed *without prejudice*.

In addition, to the extent Rodriguez's First Claim for Relief alleges "Impairment of Employment Contract" under 42 U.S.C. § 1981, as opposed to disparate treatment as the claim is characterized by the School, she has failed to allege the existence of any employ-ment contract between herself and the School.  *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S. Ct. 1246, 1249-50, 163 L. Ed. 2d 1069 (2006) ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,'

12 - FINDINGS AND RECOMMENDATIONS

§ 1981(b), under which the plaintiff has rights."). As a result, her First Claim for Relief should be dismissed on this ground, as well.

### 2.    Respondeat Superior Liability

The School further argues Rodriguez has failed to allege, in connection with her claims under 42 U.S.C. § 1981, that the School's actions were based on any official district policy, rather than on the doctrine of *respondeat superior*. The School notes, correctly, that the Supreme Court has specifically held a municipality cannot be held liable under the doctrine of *respondeat superior*. Dkt. #5, p. 6 (citing *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)); *see Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Indeed, the *Jett* Court held that to prevail on a claim for damages against a school district under section 1981, the plaintiff must show the violation of rights protected by section 1981 "was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Jett*, 491 U.S. at 735-36, 109 S. Ct. at 2723.

Rodriguez has failed to allege that the discriminatory treatment of which she complains was caused by any custom or policy of the School. As a result, she has failed to state a claim for which relief can be granted under 42 U.S.C. § 1981, and the School's motion to dismiss her First Claim for Relief should be granted. The same analysis applies with regard to Rodriguez's Third Claim for Relief, a hostile work environment claim also alleged as a violation of section 1981. *See* Dkt. #1, ¶¶ 32-37. As a result,

13 - FINDINGS AND RECOMMENDATIONS

1  her Third Claim for Relief also should be dismissed on this basis,

2  as well as on the basis discussed in the next section of this

3  opinion.

4

5            *C.  Hostile Work Environment Claims*

6        The School argues Rodriguez has failed to plead facts that can

7  sustain a claim for hostile work environment.  To assert a claim

8  for hostile work environment, a plaintiff must allege "the

9  existence of severe or pervasive and unwelcome verbal or physical

10 harassment because of a plaintiff's membership in a protected

11 class." *Sheridan v. Providence Health & Services-Oregon*, slip op.,

12 2011 WL 6887160, at *5 (D. Or. Dec. 29, 2011) (Simon, J.) (citation

13 omitted).  Chief Judge Aiken of this court has explained the

14 pleading requirements for a hostile work environment claim as

15 follows:

16              To state a claim based on hostile work envi-
               ronment, plaintiff must allege that the
17             offensive conduct regarding a protected class
               was sufficiently severe or pervasive that it
18             altered the working conditions and created a
               hostile environment. *Meritor Savings Bank v.*
19             *Vinson*, 477 U.S. 57, 67[, 106 S. Ct. 2399,
               2405, 91 L. Ed. 2d 49] (1986).  While plain-
20             tiff alleges that she is a member of a
               protected class . . ., she fails to allege how
21             or why she was subject[ed] to a hostile work
               environment due to her [protected class].
22             Plaintiff should specifically allege the
               essential elements of a hostile work
23             environment claim pursuant to Or. Rev. Stat.
               659A.030; how defendant allegedly treated
24             plaintiff differently due to her asserted
               protected class; and how the conduct was so
25             pervasive and severe as to amount to a hostile
               work environment.

26

27 *Stell v. Intel Corp.*, 2010 WL 2757555, at *2 (D. Or. July 7, 2010)

28 (Aiken, C.J.).

14 - FINDINGS AND RECOMMENDATIONS

In the present case, Rodriguez alleges she is "a Mexican-American woman."  Dkt. #1, ¶ 1.  She alleges numerous instances when her supervisor, Van Horn, was rude, verbally harassed her, and acted in a matter that was emotionally distressing to Rodriguez. However, the only allegations Rodriguez makes that relate specifically to her race are the following:

> 8.   On or about 22 April 2011, Van Horn told [Rodriguez] and Rosa Vargas, another employee, in a raised and angry voice, that they were not allowed to speak Spanish at work and they had to speak English.  This was communicated in a way that was derisive of the Spanish language and Spanish speakers, generally.

> .   .   .

> 15.  On or around 10 October 2011, Van Horn asked to have another person interpret [Rodriguez] from Spanish because she refused to speak in English with her.   When [Rodriguez] did not understand something that was said she yelled at [Rodriguez] and refused to repeat herself.[2]

Dkt. #1, ¶¶ 8 & 15.  Thus, Rodriguez alleges that on two occasions, nearly six months apart, one coworker acted in a way Rodriguez deemed to be "derisive of the Spanish language and Spanish speakers, generally."  These incidents do not rise to the level of "pervasive and severe" conduct required to state a claim for hostile work environment.  Further, Rodriguez has failed to allege

---

[2]The court notes this allegation is not a model of clarity. It is not clear whether Rodriguez is alleging that she, herself, "refused to speak in English" with Van Horn, and whether Van Horn asked someone to interpret Van Horn's English-language statements to Rodriguez in Spanish, or Rodriguez's Spanish-language statements to Van Horn in English.

15 - FINDINGS AND RECOMMENDATIONS

facts indicating Van Horn's other actions toward her, although allegedly offensive and rude, were motivated by Rodriguez's race.[3]

I therefore recommend the School's motion to dismiss Rodriguez's federal and state claims for hostile work environment (her Third, Fourth, and Fifth Claims for Relief) be granted, and those claims be dismissed *without prejudice*.

### D. IIED Claim

The School argues Rodriguez has failed to allege sufficient facts to show the School's actions "constituted an extraordinary transgression of the bounds of socially tolerable conduct." Dkt. #5, p. 13 (citations omitted). Here, again, Rodriguez asserts the School is attempting to argue the merits of her claim, rather than whether she has properly pled her IIED claim. She also argues, without citing any supporting authority, that the School's reliance on Oregon cases "is an outright error," because Oregon's pleading standards relating to an IIED claim "are completely irrelevant to this inquiry and federal courts in general." Dkt. #12, pp. 11-12.

Judge Mosman of this court recently explained what a plaintiff must plead to survive a 12(b)(6) motion relating to an IIED claim:

> To prevail on an IIED claim under Oregon law, plaintiff must prove: (1) defendant intended to inflict severe emotional distress on the plaintiff; (2) defendant's actions caused the plaintiff severe emotional

---

[3]The School also argues "[t]he law states that '[a] bilingual employee is not denied a privilege of employment by an English-only policy.'" Dkt. #5, p. 11 (quoting *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1488 (9th Cir. 1993)). This argument misses the point. The *Garcia* court's holding does not address the situation where a worker is subjected to pervasive derisive treatment as a result of his or her ethnicity.

distress; and (3) defendant's actions transgressed the bounds of socially tolerable conduct. *Schiele v. Montes*, 218 P.3d 141, 144 (Or. Ct. App. 2009) (citing *McGanty v. Staudenraus*, 901 P.2d 841 (Or. 1995)). [The plaintiff] **must allege specific facts as to each element in her complaint.**

*Ziya v. Global Linguistic Solution*, slip op., 2012 WL 1357678, at *3 (D. Or. Apr. 19, 2012) (emphasis added). Judge Mosman held, therefore, that the elements of an IIED claim under Oregon law must be pled factually, rather than conclusively, by the plaintiff in her Complaint in order to survive a motion to dismiss. *Id.*

"'A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability.'" *Ballard v. Tri-County Metro. Transp. Dist. of Oregon*, No. 09-873, slip op., 2011 WL 1337090 (D. Or. Apr. 7, 2011) (Papak, MJ) (quoting *House*, 218 Or. App. at 358, 179 P.3d at 736; and citing *Pakos v. Clark*, 253 Or. 113, 453 P.2d 682, 691 (1969) "('It was for the trial court to determine, in the first instance, whether the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.')").

For conduct to be sufficiently "extreme and outrageous" to support a claim for IIED, the conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *House*, 218 Or. App. at 358-60, 179 P.3d at 737-39 (quoting *Restatement (Second) of Torts*, § 46, comment d). As I have observed on previous occasions:

17 - FINDINGS AND RECOMMENDATIONS

Conduct that is merely "rude, boorish, tyrannical, churlish, and mean" does not support an IIED claim. *Patton v. J.C. Penney Co.*, 301 Or. 117, 124, 719 P.2d 854, 858 (1986). "[T]he tort does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life even when the intentional conduct causing plaintiff's distress otherwise qualifies for liability." *Hall v. The May Dep't Stores Co.*, 292 Or. 131, 135, 637 P.2d 126, 129 (1981); *see also Watte v. Maeyens*, 112 Or. App. 234, 237, 828 P.2d 479, 480-81 (1992) (no claim where employer threw a tantrum, screamed and yelled at his employees, accused them of being liars and saboteurs, then fired them all); *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 205-06, 818 P.2d 930, 934 (1991) (no claim where employee terminated for refusing to pull down pants).

*Wolf v. Ron Wilson Center for Effective Living, Inc.*, slip op., 2010 WL 4638888, at *5 (D. Or. Nov. 8, 2010).

The determination of whether conduct rises to this level "is a fact-specific inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances." *Id.* However, although the inquiry is fact-specific, the question of whether the defendant's conduct exceeded "the farthest reaches of socially tolerable behavior" is, initially, "a question of law." *Houston v. County of Wash.*, 2008 WL 474380, at *15 (D. Or. Feb. 19, 2008) (citation omitted).

For purposes of a motion to dismiss, as explained above, the court takes the allegations in the Complaint as true. Here, Rodriguez has alleged Van Horn repeatedly treated her rudely, shouted at her in front of her coworkers, threw things at her, grabbed things from her hands, spoke angrily to her, lied about her work performance, and generally harassed her. Rodriguez has alleged that Van Horn's actions were intended to inflict severe

18 - FINDINGS AND RECOMMENDATIONS

emotional distress on her, actually caused her to suffer severe
emotional distress, and constituted "an extraordinary transgression
of the bounds of tolerable conduct." Dkt. #1, ¶¶ 54-56.

Even if all of the facts pled by Rodriguez are true, they do
not approach the level of extreme and outrageous conduct required
to support a claim for IIED under Oregon law. The court recognizes
that this is not a motion for summary judgment, where the court
considers the evidence to determine whether the plaintiff can *prove*
her case. Rather, on a motion to dismiss, the court merely
considers the sufficiency of the plaintiff's pleading to determine
whether she has met the requirements of Federal Rule of Civil
Procedure 8(a), and *Ashcroft v. Iqbal*. Nevertheless, here, the
court finds Rodriguez has failed to plead facts that, even if true,
are sufficient to survive dismissal of her IIED claim. Accord-
ingly, the School's motion to dismiss Rodriguez's IIED claim should
be granted with leave to amend. If additional facts are pled on
amendment, the court suggests any further challenge by the School
be made at summary judgment, rather than in a subsequent motion to
dismiss, as the court sees nothing to be avoided in discovery by a
further motion to dismiss.

### E.   Punitive Damages

The School seeks dismissal of Rodriguez's claim for punitive
damages with respect to her state law claims and her claims under
42 U.S.C. § 1981. Dkt. #5, pp. 15-16. Rodriguez agrees that
punitive damages are not available under those particular claims,
as currently pled. Dkt. #12, p. 12. However, Rodriguez asserts
that through discovery, she may identify other bases that would

1   support punitive damages.  She argues that merely including the
2   possibility of punitive damages in her prayer for relief should not
3   be subject to dismissal at this stage of the game.

4       As currently pled, the court finds Rodriguez's claim for
5   punitive damages should be dismissed.  When she amends her
6   Complaint, if Rodriguez believes she has an appropriate claim for
7   punitive damages, then she may include the claim, and any objection
8   by the School can be dealt with at the dispositive motion stage.

10      ***F.  Motion to Make More Definite and Certain***

11      The School argues Rodriguez's "first and second claims must be
12  made more definite and certain so as to distinguish them from the
13  third and fourth claims.  Alternatively, one of each claim should
14  be stricken based on redundancy."  Dkt. #5, p. 16.

15      Because the court has found Rodriguez's First, Second, Third,
16  and Fourth Claims for Relief should be dismissed on various
17  grounds, the School's motion to make more definite and certain is
18  moot as to the current Complaint.[4]

20      ***G.  Conferral of Counsel***

21      Rodriguez also argues the School's counsel failed to confer
22  with her counsel as required by Local Rule 7.1, prior to filing the
23  motion to dismiss.  Dkt. #12, pp. 4-5.  The School's counsel

---

25
26  [4]However, should Rodriguez succeed in amending her Complaint
    to correct the pleading errors discussed above, she would do well
27  to ensure the basis for each of her claims is clear in the amended
    pleading, and the claims are not duplicative (with the exception of
28  federal and state law claims for the same loss, which is per-
    mitted).

20 - FINDINGS AND RECOMMENDATIONS

asserts that good-faith efforts to confer were made, and counsel did, in fact, confer prior to the time the motion was filed. At the hearing on the School's motion, its counsel was unable to provide a satisfactory reason for the eleventh-hour attempt to confer, which commenced the day before the deadline to move or plead expired. It appears the motion to dismiss could have been rendered unnecessary, or at least mostly so, by appropriate conferral. Nevertheless, the court stops short of recommending the School's motion be denied solely on this basis. However, as noted above, the failure to confer properly may be taken into consideration at the time either party seeks attorney's fees in connection with the motion.

### III. CONCLUSION

For the reasons discussed above, the undersigned respectfully recommends the School's motion to dismiss be **denied** as to Rodriguez's Fifth Claim for Relief (Hostile Work Environment under Title VII), and **granted** as to her First, Second, Third, Fourth, and Sixth Claims for Relief.

### SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by **December 3, 2012**. If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then any response is due by **December 20, 2012**. By the earlier of

the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 14th day of November, 2012.


/s/ Dennis J. Hubel
_____
Dennis James Hubel
Unites States Magistrate Judge

22 - FINDINGS AND RECOMMENDATIONS